IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

BRUCE W. HUTCHENS and
SHIRLEY VICTORIA VEST-HUTCHENS,

     Plaintiffs,

v.                       CIVIL ACTION NO. 1:11-00996

WEST ASSET MANAGEMENT, INC., and
A&N FINANCIAL FIRM,

     Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending before the court is plaintiffs' motion for default judgment against defendant A&N Financial.  (Doc. No. 24).  For reasons expressed more fully below, that motion is **GRANTED** in part and **DENIED** in part.

## I.  Background

According to the Complaint, on or about December 28, 2010, an employee of defendant A&N Financial Firm, identifying herself as Declan Ross, called plaintiffs' daughter Sandra Hill[1].  Complaint ¶ 13.  Ross told Sandra Hill that she was "with the Sheriff's department" and that if plaintiffs did not contact her within two (2) hours a bench warrant would be issued for plaintiffs' arrest.  <u>Id.</u>  Sandra Hill immediately conveyed Ross' message to plaintiffs.  <u>See id.</u>

---

[1] The Complaint identifies plaintiffs' daughter as both "Sandra Ross" and "Sandra Hill."  <u>See</u> Complaint ¶ 13.  The court will refer to her as "Sandra Hill."

Upon receiving the message, plaintiffs promptly called Declan Ross.  See id. ¶ 14.  Ross told plaintiffs that she was a debt collector with A&N Financial Firm and that she was collecting a debt on an account with Household Bank, ending in account number 6671.  See id.  Ross told plaintiffs that if they did not pay the debt that they would be arrested.  See id.

According to plaintiffs, on or about June 20, 2006, account ending in 6671 had been settled in full by agreement between plaintiffs, who were represented by The Seideman Law Firm ("Seideman"), and West Asset Management, a debt collection agency.  See id. ¶¶ 11-12.  Plaintiffs informed The Seideman Law Firm about Ross' phone calls and, in turn, Seideman informed A&N Financial that account ending in 6671 had been settled.  See id. ¶ 16.

On December 16, 2011, plaintiffs filed this Complaint against defendants West Asset Management and A&N Financial Firm, seeking relief under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.  The First Cause of Action alleged multiple violations of the FDCPA.  See id. ¶¶ 17-23.  The Second Cause of Action alleged a claim for "tort in se."[2]  See

---

[2] "A `tort in se' or `tort in essence' is the breach of a non-consensual duty owed another."  Gollas v. County of Los Angeles, No. CV 12-8742-CAS, 2013 WL 800272, *6 (C.D. Cal. Mar. 4, 2013) (internal citations and quotations omitted).  "Violation of a statutory duty to another may therefore be a tort and violation of a statute embodying a public policy is generally actionable even though no specific civil remedy is provided in

id. ¶¶ 24-25.  The Third Cause of Action alleged a violation of plaintiffs' right of privacy.  See id. ¶¶ 26-30.  The Fourth and Fifth Causes of Action are for Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress.  See id. ¶¶ 31-40.

On May 2, 2012, the Clerk entered default against defendant A&N Financial Firm.  Thereafter, on May 9, 2012, plaintiffs filed the instant motion seeking the entry of a default judgment against A&N Financial Firm.  Plaintiffs sought judgment in the amount of $31,191.38.  According to the exhibit attached to their motion, that amount represents $25,000.00 in damages, $6,000.00 in attorney fees, and $191.38 in costs.  Plaintiffs did not offer any documentation or affidavits to support the amounts they sought.

For this reason, the court held a hearing on plaintiffs' motion, on December 19, 2012.  At that hearing, counsel for plaintiffs agreed to submit a memorandum in support of her motion which more fully laid out the damages plaintiffs were seeking and offering support for those amounts.

Plaintiffs submitted their bench brief on January 23, 2013.[3] In that filing, they continue to seek damages of $25,000.00.

---

the statute itself."  Id.

[3] Contemporaneous with the filing of that motion, plaintiffs filed a motion for an extension of time within which to file a brief.  (Doc. No. 31).  That motion is **GRANTED**.

According to their brief, this figure is reasonable because they would be entitled to statutory damages in an amount up to $1,000.00 under the FDCPA and between $2,661.78 and $26,617.98 for violations of the West Virginia Consumer Credit Protection Act ("WVCCPA").  The amount sought in attorney fees increased to $6,937.47 and they seek an award for paralegal fees of $1,100.46. Plaintiffs also increased their demand for costs, now arguing that they are entitled to an award of $927.23 in costs.

## II.  Applicable Statutes

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Pursuant to the rule, a default judgment may be entered by the Clerk "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation. . . . In all other cases, the party must apply to the court for a default judgment. . . ."  Fed. R. Civ. P. 55(b)(1) and (2).

A defendant in default admits the factual allegations in the complaint.  Fed R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); see also Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount

4

of damages, will be taken as true."). However, it remains the task of the district court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001).

Under the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692. "The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action" is specifically recognized as a violation of the FDCPA. 15 U.S.C. § 1692(e)(4). A plaintiff who is successful on their FDCPA claim is entitled to recover, in addition to actual and statutory damages, costs plus "a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3).

### III. Analysis

According to the Complaint, defendant A&N Financial Firm, through Declan Ross, told plaintiffs' daughter that she was with the Sheriff's Department and that plaintiffs would be arrested if they did not call her back. Ross also told plaintiffs that, if they did not pay the debt in question, they would be arrested.

5

Based upon these allegations, which are taken as true in light of A&N Financial Firm's failure to defend itself, the court finds that plaintiffs' complaint states a violation of 15 U.S.C. § 1692(e)(4).

A.  *Damages*

As discussed earlier, having prevailed on their FDCPA claim, plaintiffs are entitled to recover actual and statutory damages, costs, and a reasonable attorney fee.  15 U.S.C. § 1692k(a). The amount of additional damages awarded may not exceed $1,000.00.  See <u>id.</u>  Recovery for additional damages is limited to $1,000.00 per proceeding, not $1,000.00 per violation.  <u>See Harmon v. Virtuoso Sourcing Grp., LLC</u>, Civil Action No. 2:11-cv-00334, 2012 WL 4018504, *4 n.1 (S.D.W. Va. Sept. 12, 2012) (citing authorities).  In determining the amount of damages, the court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional[.]"  15 U.S.C. § 1692k(b)(1).

The noncompliance in this case was not particularly frequent or persistent.  According to the Complaint, there were only two phone calls.  However, the nature of the noncompliance was significant - - defendant's representative was untruthful with plaintiffs' daughter when she told her that she was with the Sheriff's Office.  Declan Ross also told plaintiffs that she

6

would have them arrested if they did not pay the debt even though she had no power to see to their arrest.  Furthermore, it appears that defendant's acts herein were intentional.  Based on the foregoing, the court will award additional damages in the amount of $1,000.00 for defendant's violation of the FDCPA.

As to plaintiffs' request for damages stemming from defendant's alleged violation of the West Virginia Consumer Credit Protection Act, there is no allegation in the Complaint that defendant violated the WVCCPA nor is the Act even mentioned. Accordingly, plaintiffs are not entitled to damages under the WVCCPA.

Plaintiffs also seek unspecified damages on their Second, Third, Fourth, and Fifth Causes of Action.  Even if such a claim was permitted in this action (and the court makes no finding as to its permissibility), the tort in se claim should be dismissed as plaintiff has not alleged sufficient facts to state a claim on which relief may be granted.

The invasion of privacy claim should likewise be dismissed. "The right of privacy, including the right of an individual to be let alone and to keep secret his private communications, conversations and affairs, is a right the unwarranted invasion or violation of which gives rise to a common law right of action for damages." O'Dell v. Stegall, 226 W. Va. 590, 623 (2010).  The right to privacy may be invaded in one of four ways:  An invasion

7

of privacy includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.  Id. (internal citations and quotations omitted).  Plaintiffs appear to allege that defendant invaded their privacy by calling them on the telephone.  The court cannot see how defendant's actions in this case violate any right to privacy.

The intentional and negligent infliction of emotional distress claims should also be dismissed.  In order for a plaintiff to prevail on a claim for intentional infliction of emotional distress, four elements must be established:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Tomblin v. WCHS-TV8, 2010 WL 324429, *10 (S.D.W. Va. 2010) (quoting Philyaw v. Eastern Associated Coal Corp., 633 S.E.2d 8, Syl. pt. 2 (W. Va. 2006)).  "[T]rial courts should first examine the proof presented by the plaintiff to determine if the defendant's conduct may legally be considered "extreme and

8

outrageous." <u>O'Dell v. Stegall</u>, 703 S.E.2d 561, 594 (W. Va. 2010).

> In evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress. Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination.

<u>Id.</u>

Judged against this backdrop, plaintiffs' claim for intentional infliction of emotional distress must fail. First, the conduct complained of is not the type of "atrocious," "intolerable," or "outrageous" behavior that exceeds the bounds of decency. Second, plaintiffs cannot show that any emotional distress suffered by them was so severe that it could not be endured by a reasonable person. <u>See, e.g.</u>, <u>Brown v. City of Fairmont</u>, 655 S.E.2d 563, 569 (W. Va. 2007) (holding that improper disbursement of pension benefits to former wife did not make out a claim for intentional infliction of emotional distress because while "resulting financial consequences were doubtless upsetting and worrisome," it did not "cause the kind of emotional upheaval that no reasonable person could be expected to endure."). For these reasons, the claim for intentional infliction of emotion distress is dismissed.

The claim for negligent infliction of emotional distress suffers the same fate.  A defendant may be held liable for negligently causing a plaintiff to experience serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct, even though such distress did not result in physical injury, if the serious emotional distress was reasonably foreseeable.  Arbogast v. Nationwide Mutual Insurance Co., 427 S.E.2d 461, 466 (W. Va. 1993); Heldreth v. Marrs, 425 S.E.2d 157 (W. Va. 1992).  A claim for negligent infliction of emotional distress "is applicable only to limited situations `premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety.'"  Tomblin v. WCHS-TV8, 2010 WL 324429, *10 (S.D.W. Va. 2010) (quoting Brown v. City of Fairmont, 655 S.E.2d 563, 569 (W. Va. 2007)).

This is not a case pertaining "to the threatened health or safety of the plaintiff or a loved one of the plaintiff."  Brown, 655 S.E.2d at 569.  Given that no such conduct is alleged herein, dismissal of the negligent infliction of emotional distress claim is appropriate.

B.  *Attorney Fees*

The FDCPA provides for an award of a reasonable attorney fees "in all but the most unusual circumstances," and the determination of a "reasonable attorney's fee" is within the sound discretion of the

10

district court.  See, e.g., Carroll v. Wolpoff & Abramson, 53 F.3d 626, 628-29 (4th Cir. 1995).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983).  The product of these variables is the lodestar figure.  See Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008) (stating that the lodestar figure provides an objective basis on which to make an initial estimate of the value of a lawyer's services.).

In calculating this lodestar figure, a district court must apply the factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), as modified by Hensley, 461 U.S. 436-37; see Barber v. Kimbrell's Inc., 577 F.2d 216, 226 (4th Cir. 1978) (adopting Johnson factors).  The Johnson factors include: (1) the time and labor required to litigate the suit; (2) the novelty and difficulty of the questions presented by the lawsuit; (3) the skill required properly to perform the legal services; (4) the attorney's opportunity costs in pursuing the litigation; (5) the customary fee for such services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in similar cases.  See Daly v. Hill, 790 F.2d 1071, 1075 n. 2 (4th Cir. 1985).

Section 1692k does not, however, "mandate a fee award in the lodestar amount."  Carroll, 53 F.3d at 629 (stating that when a plaintiff has achieved only partial or limited success, the district court, in calculating an appropriate fee award, may simply reduce the award to account for the limited success.).  In assessing the reasonableness of fees and costs in the context of § 1692k, courts look to "the substantial Supreme Court precedent pertaining to the calculation of reasonable attorney's fees" under the civil rights statutes.  Carroll, 53 F.3d at 629 (quoting Graziano v. Harrison, 950 F.2d 107, 113-14 (3d Cir. 1991).  A

district court should consider the amount of damages awarded as compared to amount sought in determining appropriate fee award. Id. (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992) (civil rights case)). If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley, 461 U.S. at 436.

Harmon v. Virtuoso Sourcing Grp., LLC, Civil Action No. 2:11-cv-00334, 2012 WL 4018504, *5 (S.D.W. Va. Sept. 12, 2012) (Johnston, J.).

The court is unable to award an attorney fee in any amount because plaintiffs have not tendered sufficient information to enable this court to determine what a reasonable attorney's fee would be in this case. While plaintiffs did submit detailed time sheets outlining the time spent by attorneys and paralegals, the time sheets do not identify the person doing the work. There are five attorneys listed on the Complaint on plaintiffs' behalf. The court has no way of knowing which of these attorneys performed the tasks reflected on the time sheets. Furthermore, the time sheets do not reflect the geographic location of the attorney(s) and/or paralegal(s) performing the work or their years of experience, factors which the court should consider in determining what a reasonable fee would be. See id. at 6. (tendering affidavits and biographies of attorneys working on case, detailed time sheets, and a national survey of attorney fees charged by consumer law attorneys to support a claim for attorney fees).

12

Based on the foregoing, the court DENIES the request for attorney fees at this time.  If they choose to provide additional information in support of their request, plaintiffs may ask the court to revisit their request for attorney fees within 14 days.

C.    *Costs*

Besides attorney's fees, a prevailing FDCPA plaintiff is entitled to "costs of the action."  15 U.S.C. § 1692k(a)(3).  Courts have determined that the cost award pursuant to § 1692k(a)(3) is limited to the costs allowed under 28 U.S.C. § 1920.  Montgomery v. Fla. First Fin. Group, Inc., No.6:06-cv-1639-Orl-31KRS, 2008 WL 3540374, *15 (M.D. Fla. Aug. 12, 2008) (citing cases).  Section 1920 allows for the recovery of "[f]ees of the clerk and marshal" 28 U.S.C. § 1920(1).  Based on this language, courts have concluded that § 1920(1) permits the recovery of the filing fee.  See Wallace v. The Kiwi Group, Inc., 247 F.R.D. 679, 685 (M.D. Fla. 2008) (indicating that filing fee is a recoverable cost under § 1920); Corsair Asset Mgmt., Inc. v. Moskovitz, 142 F.R.D. 347, 351 (N.D. Ga.1992) (same) (Forrester, J.).  Also, the Eleventh Circuit has concluded that § 1920(1) allows for a party to recover private process server fees so long as the fees do not exceed the statutory fees in 28 U.S.C. § 1921.  U.S. E.E.O.C. v. W & O, Inc., 213 F.3d 600, 624 (11th Cir. 2000) ("We hold that private process server fees may be taxed pursuant to § § 1920(1) and 1921.").

Frazier v. Absolute Collection Service, Inc., 767 F. Supp.2d 1354, 1368 (N.D. Ga. 2011).

Plaintiffs seek to recover the following as costs:

1.   Fee to the West Virginia State Bar       $350.00

2.   Filing Fee                                $350.00

3.   Service Fee                               $40.00

4.   Fee to the US District Court             $50.00

5.   Mileage to Bluefield                      $125.23

```
   6.   Tolls                          $12.00
```

Of the costs for which plaintiffs seek reimbursement, only the
filing fee and service fee are recoverable under 28 U.S.C. §
1920.  The court is unable to ascertain whether the $50.00 fee to
the US District Court is recoverable because it is without
sufficient information to determine what the fee is.  Based on
the foregoing, the court will grant the motion for costs in the
amount of $390.00.

## IV.  Conclusion

For the reasons stated above, the court GRANTED in part and
DENIED in part plaintiffs' motion for default judgment.  The
court awarded statutory damages under the FDCPA in the amount of
$1,000.00 and $390.00 in costs.  The request for attorney fees is
denied without prejudice.  The court will enter an appropriate
judgment order only after the time has passed for plaintiffs' to
renew their request for attorney fees.

The Clerk is directed to send copies of this Memorandum
Opinion and Order to counsel of record and unrepresented parties.

IT IS SO **ORDERED** this the 29th day of March, 2013.

ENTER:

David A. Faber
Senior United States District Judge

14